UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANCY I. STETZEL, | ) |
| Plaintiff, | ) No. CV-11-439-CI<br>) |
| v. | ) ORDER GRANTING PLAINTIFF'S<br>) MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security,[1] | )<br>) |
| Defendant. | )<br>) |

BEFORE THE COURT are cross-motions for Summary Judgment. ECF No. 14, 15. Attorney Maureen J. Rosette represents Nancy I. Stetzel (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 12. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

On May 26, 2009, Plaintiff filed an application for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

supplemental security income, alleging disability beginning May 1, 2003.  Tr. 17; 145.  Plaintiff reported that she stopped working due to depression, personality disorder, and hepatitis C.   Tr. 150. Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ). Tr. 71-126.  A hearing was held on June 1, 2010, at which vocational expert Sharon Welter, Plaintiff's roommate Collette Downs and Plaintiff, who was represented by counsel, testified.  Tr. 37-70. ALJ Caroline Siderius presided.  Tr. 37.  The ALJ denied benefits on June 18, 2010.  Tr. 17-30.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 46 years old and lived in her friend's duplex with the friend and the friend's 16 year-old daughter.  Tr. 43. Plaintiff has two adult children.  She was in special education classes in grade school, dropped out in the seventh grade, and she eventually obtained a GED.  Tr. 42-43; 49; 52.

Plaintiff testified that she used methamphetamine until two years prior to the hearing.  Tr. 45.  She also testified that she is unable to work due to depression.  Tr. 46.  She said she last attempted suicide one year prior to the hearing.  Tr. 50.

Plaintiff also said she does not cook, clean, drive, or use public transportation.  Tr. 51.  She occasionally does her own laundry.  Tr. 52.  She said she can sit for about 15 minutes at a time, and can stand for about ten minutes before her back starts to burn.  Tr. 53-54.  Plaintiff said she has trouble with her memory,

she does not sleep well, and she hears voices. Tr. 57. Plaintiff testified that when she is around people, she experiences panic attacks. Tr. 59.

Plaintiff's previous work included telephone solicitor and housekeeper. Tr. 65.

## ADMINISTRATIVE DECISION

At step one, ALJ Siderius found that Plaintiff had not engaged in substantial gainful activity since May 26, 2009, the application date. Tr. 19. At step two, she found Plaintiff had the severe impairments of hepatitis C, asthma, depression and personality disorder. Tr. 19. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 25. The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a light work, with the following limitations: "She should avoid concentrated exposure to odors, gases, fumes, and poor ventilation. She is capable of routine, simple, repetitive 1-3 step tasks. She should be isolated from other workers, with rare contact with coworkers or the public." Tr. 26.

In step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. Tr. 27. The ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy, such as cleaner/housekeeper. Tr. 29.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by improperly rejecting the medical opinions of W. Scott Mabee, Ph.D., and Bill Martin, R.N. ECF No. 14 at 12-13.

**DISCUSSION**

Plaintiff contends that the ALJ improperly rejected the

opinions of Dr. Mabee or Nurse Martin.[2]  The ALJ rejected both Dr. Mabee and Nurse Martin's opinions by stating: "The undersigned gives no weight to the opinions of Dr. Mabee and Nurse Martin as careful review indicates they relied heavily on the claimant's self statements to arrive at their conclusions.  Indeed, Dr. Mabee diagnosed depression at 9F based upon the exaggerated results of the Beck Depression Inventory." Tr. 28.  In the context of evaluating a claim for SSA benefits, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  As with a treating physician, the ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and "specific" and "legitimate" reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician.  *Id.* at 831. Factors that an ALJ should consider when evaluating all medical opinions include "the amount of relevant evidence that supports the

---

[2] Because the ALJ's error related to the analysis of Dr. Mabee's opinion requires remand, we do not address Plaintiff's contention that the ALJ improperly rejected Nurse Martin's opinions.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

In this case, the ALJ provided a single reason for rejecting both medical opinions: the opinions relied "heavily" upon Plaintiff's discredited self-reports. Tr. 28. Where a medical source's opinion is based largely on the Plaintiff's own subjective description of symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject that opinion. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Dr. Mabee examined[3] Plaintiff on three occasions. During the January 13, 2009, exam, Dr. Mabee administered the following objective tests: (I) Beck Depression Inventory; (ii) Hamilton Anxiety rating Scale; (iii) Rey 15-Item test; (iv) Trail Making Tests, Parts A & B; (v) Weschler Adult Intelligence Scale, 4th Edition; and the (vi) Personality Assessment Inventory. Tr. 249. Dr. Mabee diagnosed major depressive disorder, recurrent, severe without psychotic features and explained that, in contrast to an earlier diagnosis by Brooke Sjostrum, MS, a malingering diagnosis did not apply in light of Plaintiff's borderline personality features:

> She was not given a diagnosis of malingering at this time because she does not appear to meet diagnostic criteria for this diagnosis. She was giving sufficient effort on all testing. People with borderline personality features often view their lives in an extremely negative manner. They will exaggerate their circumstances because this is

---

[3]Dr. Mabee directly supervised the March 10, 2009, evaluation conducted by Amy Robinson, MS. Tr. 254.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

> actually how they see their life. Therefore it is likely their testing results may be skewed and will over report negative symptoms.

Tr. 253. Dr. Mabee completed a Psychological/Psychiatric Evaluation on March 25, 2009. Tr. 273-76. He opined Plaintiff was markedly limited in her abilities to: (1) exercise judgment and make decisions; (2) relate appropriately to co-workers and supervisors; and (3) respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 275.

Dr. Mabee next examined Plaintiff on November 12 and 13, 2009, and again completed a Psychological/Psychiatric Evaluation form. Tr. 391-98. Dr. Mabee assessed Plaintiff was severely limited in her abilities to: (1) exercise judgment and make decisions; (2) relate appropriately to co-workers and supervisors; and (3) respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 396. Dr. Mabee also assessed Plaintiff with marked limitations in both her ability to interact appropriately in public contacts and in her ability to maintain appropriate behavior in a work setting. Tr. 396.

As part of this exam, Dr. Mabee administered both the MMPI-2-RF and a Mental Status Exam, and he determined the results of the MMPI-2-RF were invalid due to Plaintiff's personality disorder:

> Her F-r and Fs scaled scores were elevated beyond the level of interpretation. This suggests she was over-reporting psychological, cognitive and somatic complaints. She was not likely over-reporting for secondary gain. Rather, people with Borderline Personality Disorder typically see their life as severely constricted as they are reporting it.

Tr. 398.

Finally, Dr. Mabee examined Plaintiff on September 1, 2011. Tr. 627-31. In the Psychological/Psychiatric Evaluation, Dr. Mabee

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

observed Plaintiff had several markedly severe impairments relating to depression, poor coping skills and social avoidance. Tr. 628. Dr. Mabee also opined Plaintiff was severely limited in her abilities to communicate with public contacts and maintain appropriate behavior in a work setting. Tr. 629. Dr. Mabee indicated Plaintiff was markedly limited in her ability to communicate in a work setting with limited public contact. Tr. 629. Dr. Mabee diagnosed Plaintiff with major depression disorder, recurrent severe with psychotic features posttraumatic stress disorder, and borderline personality disorder with dependent features. Tr. 628.

The record establishes that Dr. Mabee examined Plaintiff, administered objective medical diagnostic tests, interpreted the test results, and applied his interpretation of the test results to the categories in the Psychological/Psychiatric Evaluation forms. The ALJ's assertion that Dr. Mabee relied "largely" upon Plaintiff's discredited self-reports, and the attendant inference that Dr. Mabee ignored the objective medical evidence and his own observations, is not supported by the record.

Moreover, as apparent justification for giving no weight to Dr. Mabee's opinions, the ALJ asserted "[i]ndeed, Dr. Mabee diagnosed depression at 9F based upon the exaggerated results of the Beck Depression Inventory." Tr. 28. As noted above, Dr. Mabee explicitly twice explained his consistent interpretation of Plaintiff's objective test results as not reflective of malingering for secondary gain, but instead simply reflecting Plaintiff's personality disorder. See Tr. 253; 398.

The ALJ may not substitute her own interpretations of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

Plaintiff's medical test results for that of Dr. Mabee, a licensed physician. See *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (error for ALJ to discount opinions of treating physicians by relying on own disbelief of claimant's symptom testimony and misunderstanding of fibromyalgia).

In this case, the ALJ's proffered reason for rejecting Dr. Mabee's testimony is not specific and legitimate, is not supported by the record and requires remand.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ shall reconsider the medical evidence, and provide a detailed and thorough summary of the facts and conflicting medical evidence, stating her interpretation thereof, and provide findings. In evaluating the medical evidence, the ALJ should consider and provide findings related to the amount of relevant evidence that supports the medical opinions and the quality of the explanations provided, the consistency of the medical opinions with the record as a whole, and the specialty of the physicians providing the opinion. *See Orn*, 495 F.3d at 631.

The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**;

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be **CLOSED.**

DATED June 27, 2013.

                        S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE